686 So.2d 790 (1997)
TAMAR 7600, INC. d/b/a Quality Inn, etc., et al., Appellants,
v.
ORANGE COUNTY, etc., Appellee.
No. 95-2455.
District Court of Appeal of Florida, Fifth District.
January 24, 1997.
Ted B. Edwards and Douglas K. Gartenlaub, of Smith, Mackinnon, Harris, Greeley, Bowdoin & Edwards, P.A., Orlando, for Appellants.
Joseph L. Passiatore, Senior Assistant County Attorney, and Linda S. Brehmer, Assistant County Attorney, Orlando; Robert L. Nabors, Sarah M. Bleakley and Virginia Saunders Delegal, of Nabors, Giblin & Nickerson, P.A., Tallahassee, for Appellee.
PER CURIAM.
Appellants, Tamar 7600, Inc., d/b/a Quality Inn International; Tamar International Inn, Inc., d/b/a International Inn; Tamar Plaza, Inc., d/b/a Quality Inn Plaza; Tamar Vista Inns, Inc., d/b/a Comfort Inn Lake Buena Vista; Tamar Convention Hotel, Inc., d/b/a Clarion Plaza; and Derek N. Baum [hereinafter collectively referred to as "Tamar"], seek review of orders of the lower court refusing to allow them to amend their complaint, dismissing their multicount complaint with prejudice and refusing certain discovery and public record requests.
This case involves Orange County's assessment, effective February 1, 1995, of a one percent "tourist tax" ("fifth-cent tax")[1] pursuant to section 125.0104(3),(l), Florida Statutes (1993), the Local Option Tourist Development Act. This statute authorizes a county to impose certain taxes on short-term rentals of living quarters or accommodations within the county for certain purposes unless such activities are exempt pursuant to Chapter 212, Florida Statutes.
The fifth-cent tax was approved by the County's Board of Commissioners to accrue funds to pay for the construction of a professional baseball stadium and related facilities in Orange County, Florida. It effectuated a "Letter of Intent" executed in September 1994 by Orange County, the City of Orlando and a group of entrepreneurs ("the Baseball Owners") who hoped to bring major league baseball ["MLB"] to Orlando.[2] The Letter of Intent was approved by the County's board of commissioners on September 13, 1994. It obligated Orange County and the City to work with the Baseball Owners exclusively *791 for a period ending two years after completion of the then current MLB expansion process in an attempt to bring major league baseball to Orlando. In the event the Baseball Owners were successful in acquiring a franchise, Orange County and the City were required to negotiate and enter into a baseball stadium lease, within the parameters of a "Summary of Expected Lease Terms" previously agreed to by the parties.
The Summary of Expected Lease Terms required Orange County and the City of Orlando to design and construct, at their sole cost and expense, a ballpark with a 45,000 to 52,000 seating capacity, together with a minimum of 9,500 parking spaces and related facilities, at an estimated expense of more than $180 million dollars. The Summary of Expected Lease Terms further provided the Baseball Owners would retain all revenues from the ballpark and related facilities, including those related to all non-baseball events.[3] The Baseball Owners were obligated to operate the ballpark and its parking and other related facilities, to assume responsibility for facility operations, routine maintenance and expenses, and to select, oversee and manage any contractors hired to assist in the operations for the term of the lease of thirty years plus any renewals thereto. At the end of the lease term, the Baseball Owners were to have a first option to purchase the ballpark and related facilities.
On December 13, 1994, the Board approved a "Revised Summary of Expected Lease Terms" which incorporated the provisions of the earlier agreement, but which eliminated the Baseball Owners' obligation to guarantee the payment of revenue bonds issued to construct parking for the ballpark, the annual amount of which was estimated at $3.5 million. The future capital improvements section was also amended to provide for excess fifth-cent tourist tax revenues to be deposited into a reserve account for maintenance and future capital improvements to the ballpark and related facilities. The Board then adopted the resolution imposing the fifth-cent tax in accordance with its agreement. The Board additionally adopted a Budget Resolution which detailed how the revenues from the tax would be spent. The resolution sets forth that certain of the fifth-cent tourist tax revenues are to be used to pay the debt service on bonds for the existing Orlando Arena and the Florida Citrus Bowl.[4] The remainder of the fifth-cent tourist tax, plus investment earnings, is to be used to pay for the cost of constructing the ballpark and related facilities. The budget resolution states that the ballpark will be constructed only if: (1) a major league baseball franchise is secured for Orange County; (2) the franchise is secured on or before either January 1, 1998, or the second anniversary of the next date on which the award of a new franchise is announced (whichever is earlier); and (3) the Board approves a lease of the stadium (or an interim lease). In the event these conditions are not met, the budget resolution provides that the excess proceeds from the fifth-cent tourist tax are to be applied to pay the bonds issued to finance the Orlando Arena and the Florida Citrus Bowl.
Tamar filed suit challenging the legality of the fifth cent tax. In a multicount complaint, Tamar principally sought injunctive relief. Orange County filed a motion to dismiss all counts of the Amended Complaint. The motion was grounded on contentions that the complaint failed to state a cause of action, that Tamar lacked standing, and that Tamar was not entitled to injunctive relief. Orange County further asserted a bona fide dispute did not exist between the parties because the challenged expenditure of revenues from the fifth-cent tax was contingent upon baseball coming to Orlando. The lower court granted Orange County's motion to dismiss, finding that the Hotel Group failed to state a cause of action as to each count, failed to show irreparable harm, and failed to show the absence of an adequate remedy at law. The order did not expressly indicate whether the *792 dismissal was being granted with leave to amend.
On July 14, 1995, the Hotel Group filed a motion to amend the amended complaint. A copy of the proposed second amended complaint was filed contemporaneously with the motion for leave to amend. This complaint contains ten counts. No count prays for injunctive relief; rather, the complaint principally seeks declaratory relief. Count I of the proposed second amended complaint alleges that the agreement between Orange County and the Baseball Owners violates Article VII, Section 10, of the Florida Constitution, in that pursuant to the agreement Orange County has pledged the use of its taxing power or credit for the benefit or aid of the Baseball Owners, a private, for-profit group. The count further asserts that to the extent section 125.0104(3)(l) permits the imposition of a tax for the purposes of financing a professional sports facility to be privately operated (and, eventually, privately owned), according to the Revised Summary of Expected Lease Terms, the statute was also passed in contravention of Article VII, section 10. Count II complains that section 125.0104(3)(l), Florida Statutes (1993) does not permit the imposition of a tourist tax to accrue funds for the purpose of constructing a ballpark. The complaint alleges that the statute permits only the imposition of a tax to pay for bonds already issued to fund construction of such a facility. Count III alleges that section 125.0104(3)(l) does not authorize the imposition of a fifth-cent tax to fund the Renewal and Replacement Reserve Account called for by the Revised Summary of Expected Lease Terms. Count IV asserts that section 125.0104(3)(l) does not authorize the imposition of a fifth-cent tourist tax for the purpose of constructing three stand-alone parking garages at an estimated cost of $35 million. The complaint contends that the tax may be imposed only to pay debt service on bonds issued to finance the construction, reconstruction or renovation of a "professional sports franchise facility" and that parking garages are not encompassed within this definition, particularly where it is intended that they will be used not only by patrons of the facility, but by patrons of the Citrus Bowl, Orange Blossom Trail Sports District and other facilities and where all revenues are to belong to the Baseball Owners. Count V alleges that section 125.0104(3)(l) does not authorize the imposition of a fifth-cent tourist tax to pay the planning and design costs incurred prior to issuance of the bonds. The count seeks an order invalidating the tax to the extent it is not being used for payment of debt service on any bonds. Count VI alleges that the "fifth-cent" tax imposed pursuant to section 125.0104(3)(l) cannot be imposed to finance the construction of a ballpark to be operated by private "for-profit" entrepreneurs. It contends that the fifth-cent tax is valid only to the extent that the ballpark is to be owned and operated by Orange County. Count VII asserts that the "fifth-cent" tax can only used to finance a single facility. Counts VIII and IX contend that the Revised Summary of Expected Lease Terms contains a number of provisions granting rights to the Baseball Owners which are subject to the competitive bidding requirements of section 125.35, Florida Statutes (1993). In particular, the Hotel Group contends that Orange County is not permitted to grant the Baseball Owners an option to purchase the ballpark, parking and related facilities or to grant them a right of first refusal to purchase or lease adjacent land for ancillary commercial and residential uses. The Hotel Group further alleges that all of the plaintiffs, with the exception of Baum, wish to bid on the rights being afforded the Baseball Owners under the proposed agreement. Both counts seek a declaration that Orange County cannot enter into a final agreement with the Baseball Owners concerning these rights unless and until the competitive bidding procedures set forth in section 125.35 are complied with. Finally, count X of the second amended complaint recasts count II, relating to section 125.0105, as an action for a declaratory judgment. The lower court denied the Hotel Group's motion for leave to amend the amended complaint.[5]
On appeal, Orange County principally argues that the suit was subject to dismissal *793 because there is no pleaded set of concrete, non-contingent facts upon which a declaration could properly be made by a court. The County urges the lower court properly exercised its discretion not to allow the amended pleading because circumstances now appear to suggest that the securing of a franchise is highly doubtful, even though the agreement remains open until March 9, 1997. The County also urges that the agreement leaves open such a range of possibilities as to exactly what the deal with the baseball owners would besuch as whether the baseball tax could be used to build parking garages or to be held in a reserve account for future improvements to the stadiumthat any adjudication concerning their propriety would be purely advisory.
Although Tamar's proposed amended pleading raises substantial issues, the County's position also has merit in that many of appellant's attacks on the stadium plan are contingent on future events and on contractual provisions that do not yet exist. However, it appears the lower court's refusal to allow any amendment and the dismissal of the entire suit was erroneous in light of the issue raised by Tamar concerning the county's power to assess a tax pursuant to section 125.0104(3)(l) and then accrue those tax dollars to fund a project that is not permitted under the constitution simply because there is another legal use to which the money could be put. We conclude that the County can't have it both waysit cannot presently assess and accrue these tax dollars for the purpose of spending them on a baseball stadium under a specific agreement and simultaneously successfully contend that a taxpayer has no present right to challenge what they are doing. We think that if the County embarks on such an enterprise there must be a present right to challenge its legality since its legality is likely to affect the very existence of the tax. If the use to which the tax is to be put is invalid, the tax will either be withdrawn and a legal bargain made or the tax will be applied for its lawful purpose. Accordingly, we reverse the dismissal of the entire case and direct the lower court to permit Tamar to amend its complaint to allege claims such as those set forth in Counts II-VI and Count X in accordance with this opinion.
REVERSED AND REMANDED.
DAUKSCH, COBB and GRIFFIN, JJ., concur.
NOTES
[1] The tax added a fifth cent to Orange County's Hotel Tax.
[2] The baseball ownership group was comprised of Norton Herrick, Paul A. Jacobs, Stephen S. Kurtz, and certain of their affiliates.
[3] These revenues included, but were not limited to, broadcast rights, private suites, catering revenue from private sales, novelty merchandise revenue, food and beverage concessions, stadium club memberships, all non-baseball events, advertising revenue, including scoreboard signage revenue, and parking revenue.
[4] This debt service is estimated to be $4,850,000 per year.
[5] We construe this order to be a final order. Appellants also seek review of a discovery order. We find no basis for reversal of the discovery order.